July 21, 1978

## 78-42 MEMORANDUM OPINION FOR THE CLASSIFICATION REVIEW COMMITTEE, DEPARTMENT OF JUSTICE

### Classification of Documents (28 CFR Part 17)—Effect of a Tie Vote by the Department Review Committee

This responds to a memorandum questioning the legal effect of a tie vote by the Department Review Committee (DRC) on the declassification of a document.[1] It is my conclusion that declassification is not appropriate where the DRC is equally divided. The question arises from an incident which took place in the course of reviewing an appeal from a denial of a request to declassify a document. One member recused himself; the remaining members split 2-2. The chairman ruled that the tie meant continued classification. The DRC upheld the ruling by a vote of 4-1.

The dissenting member argues that this ruling is contrary to 28 CFR § 17.39, reading as follows:

> In making its determinations concerning requests for declassification of classified information or material, the Department Review Committee shall impose for administrative purposes the burden of proof on the originating division to show that continued classification is warranted.

He contends that a tie vote by the DRC evidences a failure by the originating division to meet its burden of proof. He also argues that a tie vote demonstrates "substantial doubt" that classification is appropriate under 28 CFR § 17.22, which provides:

> If the classifying authority has any substantial doubt . . . as to whether the information or material should be classified at all, he should designate the less restrictive treatment.

The contention involving § 17.22 can be dealt with briefly. Part 17 of 28 CFR treats classification and declassification separately and establishes specific

---

[1] Under § 7(c) of Executive Order No. 11652, 3 CFR 678 (1971-1975 Compilation), the Attorney General is authorized to render an interpretation regarding any question arising in the course of administration of the order.

standards to govern each. Classification is governed by subpart D. Under 28 CFR § 17.15, information must be classified in "the lowest . . . category consistent with its proper protection." Section 17.22 guides the classifying authority· in applying this standard. Subparts F and G provide parallel control over declassification. Under 28 CFR § 17.29, information must be declassified or downgraded "as soon as there are no longer any grounds for continued classification." Section 17.39 guides the DRC in applying this standard to declassification. While the provisions governing classification, including § 17.22, may provide useful guidance in assessing declassification questions, the structure of the regulations suggests that those provisions are not designed to control declassification decisions.

The more substantial issue arises from the burden of proof provision in the portion of the regulations that relate directly to the declassification review process. Under 28 CFR § 17.29, the DRC must declassify if it finds that circumstances have changed so that classification is no longer warranted. Section 17.39 places "for administrative purposes the burden of proof" on the classifier to show that the information still requires protection. The term "burden of proof" is a general term of art which ordinarily includes within its meaning both the "burden of production" and the "burden of persuasion" and, depending on the context in which it is used, may refer to either. The first is the burden of presenting evidence; the party having the burden of production must go forward with his proof on an issue or lose it by default.[2] The burden of persuasion is the burden of ultimately convincing the finder of fact; that burden may, and often is, placed on a party other than the one bearing the burden of production.[3]

The issue, then, is whether the reference to the "burden of proof" in § 17.39 was intended to refer to the ultimate burden of persuasion or to the burden of going forward. It is my opinion that this section imposes on the originating division only the procedural burden of going forward with the production of evidence and argument in favor of retaining the classification. The language of the provision itself strongly suggests this conclusion—the burden is assigned for "administrative purposes." The most logical connotation of those words is that the burden has been allocated for procedural purposes, *i.e.*, to govern the order of proof. This is consistent with the ordinary understanding that the allocation of the ultimate burden of persuasion to one or the other party in an adjudication is a matter of substance.[4]

This reading is also consistent with the familiar evidentiary principle that the party most likely to have information about a subject is required to come forward with it, and that a party ought not to be required to prove a negative.[5] Since the DRC considers appeals from denial of declassification, the appellant-

---

[2]*See generally* McCormick, *Evidence* § 336 (1972 ed.), at 783-84; 9 Wigmore, *Evidence* § 2485, 2487 (3d ed.), at 271-74.

[3]For example, the State bears the burden of proof, including sanity, in a criminal case, but the defendant must first place sanity in issue. *See* 9 Wigmore, *Evidence* § 2501 (3d ed.), at 359.

[4]*See* Wigmore, *Evidence* § 2488 (3d. ed.), at 284.

[5]*See* McCormick, *Evidence* § 336 (1972 ed.), at 786-87.

requester would normally have the burden of going forward with evidence that continued classification is unnecessary.[6] This would require the requester to prove a negative in the face of the classifier's superior knowledge of why continued classification is needed. The regulation, therefore, requires the classifier to go forward, in order to clearly define the issue before the DRC.

This conclusion is consistent with the assigned function of the DRC, if that function is to declassify a document when it is satisfied that there are "no longer any grounds for continued classification." It takes action only when it has "determined" that classification is no longer appropriate. 28 CFR § 17.38(b)(4). Although the regulation reflects a sensitivity to the need of preventing excessive classification, its primary purpose, like the central purpose of Executive Order No. 11652, is to protect against the disclosure of national security information.[7] 28 CFR § 17.1; Executive Order No. 11652, preamble 6(G). If the regulation had been intended to create a contrary presumption in favor of declassification, that purpose would have been more clearly expressed than in the burden-of-proof reference in § 17.39.

Relying upon the language of 28 CFR § 17.39, general principles of the law of evidence, the purpose of the regulation and the Executive order governing classified information, we conclude that an equally divided vote of the DRC does not result in declassification.[8]

LARRY A. HAMMOND
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[6]*See* McCormick, *Evidence* § 337 (1972 ed.), at 786.

[7]Section 3-301 of Executive Order No. 12065, of June 28, 1978, provides that information classified under that or previous Executive orders shall be declassified "as early as national security considerations permit." The new Executive order thus continues the primary emphasis on the protection of national security information from disclosure.

I also note that the leading case interpreting Executive Order No. 11652, under the Freedom of Information Act, 5 U.S.C. § 552(b)(1), holds that classification is presumed lawful until the requester shows otherwise. *Alfred A. Knopf Co.* v. *Colby*, 509 F. (2d) 1362 (4th Cir. 1975).

[8]This is consistent with appellate court practice that a tie vote results in an affirmance of the lower court. *See, e.g., Williams & Wilkins Co.* v. *United States*, 420 U.S. 376 (1975); *Bailey* v. *Richardson*, 341 U.S. 918 (1951).